## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OASIS POOL SERVICE INC, | * | CIVIL ACTION NO. |
| individually and on behalf of all others | * | |
| similarly situated, | * | COMPLAINT |
| | * | |
| Plaintiff, | * | JURY TRIAL DEMANDED |
| vs. | * | |
| | * | SECTION |
| POOL CORPORATION, SCP | * | |
| DISTRIBUTORS LLC, and SUPERIOR ' * | | MAGISTRATE |
| POOL PRODUCTS, LLC. | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT AND REQUEST FOR JURY TRIAL

NOW INTO COURT, comes Plaintiff Oasis Pool Service Inc., who by and through counsel, brings this action against the Defendants Pool Corporation ("PoolCorp"), SCP Distributors LLC ("SCP"), and Superior Pool Products LLC ("Superior") (collectively "PoolCorp" or "Defendants") and allege the following upon information and belief and investigation of counsel:

## NATURE OF THE ACTION

1.      This action seeks to recover damages for injuries sustained by the Plaintiff as the direct and proximate result of the wrongful conduct of the Defendants in conspiracy and in violation of Section 2 of the Sherman Act, to monopolize the market for pool products sold in the United States and to block potential new entrants into the market. Plaintiff brings this

action on behalf of itself individually, and on behalf of a proposed class of entities that purchased pool products directly from any defendant from January 1, 2003 to the present.

2.     Defendants conspired and utilized anticompetitive practices to acquire and maintain monopoly power in the swimming pool product market. The pool product market includes residential and commercial swimming pool and leisure products.

3      As a direct and proximate result of their monopoly and conspiracy practices, Defendants prevented competition in the market for pool products; significantly raised the costs incurred by their rivals thereby lowering sales; increased their prices; and reduced the number of choices available to consumers.

## JURISDICTION AND VENUE

4.     This case is brought under the provisions of Section 4 of the Clayton Act, 15 U.S.C. § 15 and Section 2 of the Sherman Act, 15 U.S.C. § 2. As such, this Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 15, 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

5.     This Court has personal jurisdiction over the Defendants, each of which has its headquarters in this State, and is licensed to conduct and/or is systematically and continuously conducting business in this State, including, but not limited to, the marketing, advertising, selling, distributing, and delivering residential and commercial swimming pool and leisure products in this State.

6.     Venue is proper in this Federal District pursuant to 15 U.S.C. § 15, 15 U.S.C. § 22, and 28 U.S.C. § 1391 as Defendants' headquarters are located in this Federal District, and

2

part of the events giving rise to this case occurred and were carried out in this Federal District.

## PARTIES

7.     Plaintiff Oasis Pool Service, Inc. is a Louisiana corporation with its principle place of business in Caddo Parish, Louisiana. Plaintiff has suffered damages as a result of Defendants' illegal and wrongful conduct described below.

8.     Defendant Pool Corporation ("PoolCorp") is a Delaware corporation with its principle place of business in St. Tammany Parish, Louisiana.

9.     Defendant SCP Distributors LLC ("SCP") is a Delaware corporation with its principle place of business in St. Tammany Parish, Louisiana. SCP is a wholly owned subsidiary of PoolCorp.

10.     Defendant Superior Pool Products, LLC ("Superior") is a Delaware corporation with its principle place of business in St. Tammany Parish, Louisiana. Superior is a wholly owned subsidiary of SCP.

## THE RELEVANT MARKET

11.     At all times material to this lawsuit, PoolCorp, SCP, and Superior (collectively, "Defendants") were authorized to do business within the state of Louisiana; did in fact transact and conduct business in the State of Louisiana; derived substantial revenue from goods and products used in the State of Louisiana; and supplied residential and commercial swimming pool and leisure products in the State of Louisiana.

3

12.     Because there are tens of millions of residential and commercial swimming pools in the United States, the distribution of swimming pool products, such as parts and materials for construction, maintenance, renovation, repair, and service, was estimate to be a $3 billion industry in 2010.

13.     Defendants, as the distributors of products used in the construction, maintenance, renovation, repair, and service of swimming pools, purchases swimming pool products from manufacturers and then sells the swimming pool products to swimming pool builders, retail sellers, as well as service and repair companies. (collectively "Swimming Pool Retailers and Services"). Swimming Pool Retailers and Servicers, in turn, sell the swimming pool products to the owners of the millions of residential and commercial swimming pools in the United States.

14.     For the manufacturers, distributors like the Defendants allow for the manufacturing of swimming pool products to take place throughout the year, despite the seasonal nature of swimming pools, because distributors purchase and warehouse large volumes of products throughout the year. Distributors will also help manufacturers process rebate and warranty programs and help the manufacturers answer product-related questions from the retailers, servicers, and consumers.

15.     For the swimming pool retailers and servicers, distributors allow for efficient purchase and delivery of swimming pool products by providing a single location in which many different types and styles of swimming pool products can be obtained.

16.     While manufacturers make a small amount of direct sales to larger swimming pool retailers and servicers, they cannot easily expand their operations into distribution because of

4

the costs, their lack of expertise in distribution, and the difficulty of obtaining products to distribute from competing manufacturers.

17. Distributors are the only available source of swimming pool products from competing manufacturers. Distributors are the only available source of swimming pool products for the vast majority of swimming pool retailers and servicers, which are typically, like Plaintiffs herein, mom-and-pop operations that do not have the inventory size or resources to purchase products directly from manufacturers. Larger swimming pool retailers and servicers that buy directly from manufacturers are not permitted by the manufacturers to participate in the wholesale distribution market and sell products to other swimming pool retailers and servicers.

18. The relevant geographic market is the Pool Product Distribution Market in (1) the United States, or in the alternative, (2) numerous local geographic markets contained therein, including, among others: (a) Alabama, (b) California, (c) Florida, (d) Louisiana, (e) Missouri, (F) New York, (g) Oklahoma, (h) Tennessee, and (i) Texas.

## THE SWIMMING POOL PRODUCTS MARKET

19. The swimming pool products market is generally very fragmented. There are over 100 manufacturers that produce a small number of product lines, such as pool heaters or diving boards and rails. However, there are only three manufacturers that sell nearly all the swimming pool products necessary to operate and maintain a pool: Pentair Water Pool and Spa, Inc. ("Pentair"); Haywood Pool Products, Inc. ("Haywood"); and Zodiac Pool Systems, Inc. ("Zodiac"). Collectively, these three full-line swimming pool product manufacturers represent more than 50% of sales at the wholesale level.

5

20.     Distributors generally carry all brands of swimming pool products across all manufacturers to satisfy any and all orders from their retailers and servicers. It is necessary to sell the products of at least one of the three full-line manufacturers to be able to compete effectively as a distributor. The products of the full-line manufacturers are "must have" products for wholesale distributors because of the volume of products they represent and the considerable consumer demand for their products. A positive relationship with these and other manufacturers is critical to the success of a swimming pool products distributor.

21.     In general, manufacturers are willing to sell their products through any credit worthy distributor that has a physical warehouse and personnel with knowledge of the swimming pool industry. Manufacturers typically prefer to have two or more distributors selling their products to ensure that their retailer and servicer customers receive competitive service and prices.

22.     Manufacturers advertise and promote their products directly to retailers and servicers to create pull-through demand at the distribution level and also offer year-end rebates to distributors based on the volume of a distributor's purchases. These year-end rebates to distributors represent a significant component of the ultimate price paid by distributors for swimming pool products. Failure to qualify for these rebates can have a substantial, detrimental impact on a distributor's ability to compete on price.

## POOLCORP'S MONOPOLY IN THE SWIMMING POOL PRODUCTS MARKET

23.     PoolCorp is the world's largest distributor of swimming pool products and operates over half of all swimming pool distribution facilities in the United States. According to Zacks Investment Research, PoolCorp has a dominant position, by reason of its market share, in the swimming pool products distribution market.

24.     PoolCorp purchases swimming pool products directly from manufacturers and then sells them to swimming pool retailers and servicers, who then sell the swimming pool products to the ultimate consumers and swimming pool owners/operators. According to the same research firm, PoolCorp also capitalizes on the highly fragmented nature of the swimming pool products market by using its market power to secure products from manufacturers at better terms than its customers would be able to achieve on their own, thereby adding value to its customers' businesses.

25.     Unlike other distributors that operate in a few local markets or a specific region, PoolCorp is the only U.S. distributor to operate nationwide. According to Zacks Investment Research, PoolCorp is the only truly national wholesale distributor focused on the swimming pool product distribution market in the U.S.

26.     Through a series of acquisitions, PoolCorp has grown to operate over 200 distribution centers throughout the U.S. By way of comparison, the next largest U.S. distributor operates less than 40 centers. In 2010, PoolCorp had $1.5 billion in net sales revenue.

27.     PoolCorp has even greater monopoly power in numerous local geographic markets across the country, including, among others: (a) Alabama; (b) Louisiana; (c) Missouri; (d) Oklahoma; (e) Tennessee; and (f) Texas. In these local markets, PoolCorp is the only or the most dominant distributor in the area, and has maintained a market share of approximately 80% or higher for at least the past five years.

28.     PoolCorp's dominance in these markets is enhanced by its status as the largest nationwide buyer of swimming pool products, often representing 30% to 50% of a manufacturer's total sales. PoolCorp obtains a significant competitive advantage in the

downstream market by qualifying for large volume discounts from manufacturers that are not available to any other distributor.

29. By virtue of the anticompetitive conduct alleged herein, PoolCorp foreclosed new entrants from obtaining swimming pool products directly from manufacturers, which created insurmountable barriers to entering the swimming pool product distribution market.

## POOLCORP'S EXCLUSIONARY PRACTICES

30. Beginning as early as 2003, PoolCorp has engaged in anticompetitive conduct by foreclosing access to essential inputs and impeding market entry by potential rivals. PoolCorp's conduct is intended to and effectively does enable it to improperly maintain and enhance its' monopoly power in the swimming pool product distribution market. PoolCorp's conduct has caused injury to competition and to consumers.

31. PoolCorp willfully obtained its monopoly power through a strategy of aggressively acquiring its competitors. Over a period of eight years, PoolCorp has purchased the following seven companies:

  (a)   August, 2003 – PoolCorp acquired Fort Wayne Pools, Inc. ("FWP") a large regional swimming pool distributor with operations in sixteen states. FWP was PoolCorp's then largest, and sometimes only, competitor in numerous locations within the U.S.;

  (b)   Late 2003 - PoolCorp acquired the assets of Litehouse Product's distribution division. Litehouse's primary business was the retail sales of swimming pool and other leisure products in the Midwestern U.S.;

8

      (c)     January 2005 – PoolCorp acquired Latham International Ltd., an Albany, New York manufacturer of vinyl swimming pool liners, polymer and steel panels, steps, and other swimming pool products, and PoolCorp acquired its Canadian subsidiary, Pool Tech Distribution, Inc.;

      (d)    November 2005 – PoolCorp announced the acquisition of the assets of Direct Replacement, Inc., a Marietta, Georgia packaged pool distributor;

      (e)    March 2008 – PoolCorp acquired National Pool Title Group, Inc. a wholesale distributor of pool tile and composite pool finishes;

      (f)    October 2009 – PoolCorp announced the acquisition of California pool and spa products distributor, General Pool & Spa Supply, Inc.

32.    Over a third of PoolCorp's cash since the company's inception has been used for these and other competitor acquisitions. Consistent with PoolCorp's routine business practice, it aggressively sought to remove any competitors it perceived as a competitive threat. PoolCorp not only acquired rivals it perceived as competitive threats, but thereafter closed them down. For instance, soon after acquiring FWP, PoolCorp closed a FWP distribution facility in Baton Rouge, Louisiana. This left PoolCorp as the only remaining distributor in the area, thereby enabling it to impose a five percent price increase.

33.    PoolCorp not only dwarfs its nearest competitors in size, it uses its dominance to further enhance and solidify its monopoly power.

34.    In the spring of 2003, a former retailer with almost 20 years of experience in the swimming pool products industry opened a distribution business in Baton Rouge, Louisiana. PoolCorp responded to this new competitor by notifying all major swimming pool product manufacturers that it would stop dealing with any manufacturer that sold any of its products

9

to the new entrant. If those manufacturers failed to comply with the warning, PoolCorp threatened to terminate not only its purchases and sales of their swimming pool products in the local Baton Rouge area, but would also stop selling those manufacturer's swimming pool products throughout the entire U.S.

35.    As the manufacturer's largest customer, PoolCorp's threat was ominous. No other distributor could replace the large volume of potential lost sales to PoolCorp, particularly in those markets where PoolCorp remains the only distributor. In fact, according to the complaint issued by the FTC, the manufacturer's loss of sales to PoolCorp could be "catastrophic" to the financial viability of even the largest manufacturer of swimming pool products.

36.    Without expending tens of millions of dollars to enter dozens of markets simultaneously, it is virtually impossible for any new potential swimming pool products distributor to offer any economic incentive to manufacturers that could compete with the purchasing and distribution power of PoolCorp.

37.    As a result of PoolCorp's threats and demands, many manufacturers of swimming pool products, including the three biggest manufacturers Pentair, Hayward, and Zodiac, refused to sell swimming pool products to the new entrant and canceled all pre-existing orders with the company. In essence, PoolCorp effectively flexed its distribution muscle and forced the new company to exit the market by locking in manufacturers of 70% of swimming pool products.

38.    Without direct access to swimming pool products, the new company's business ultimately failed in 2005.

10

39.      A new market entrant simply cannot overcome PoolCorp's efforts to crush a potential

competitor. PoolCorp's exclusionary tactics in Louisiana were mirrored by its similar

conduct in preventing competition throughout the country. For instance, new entrants cannot

overcome PoolCorp's exclusionary tactics by purchasing swimming pool products from other

distributors, rather than directly from the manufacturers. As a general rule, distributors do not

sell swimming pool products to other distributors. Even when possible, this alternative is not

a viable long-term economic strategy because it substantially increases a distributor's costs

and lessens quality of service.

40.      For example, a new entrant into the market who buys from another swimming pool

product distributor is forced to pay transportation costs from that distributor's location rather

than receiving free shipping under well-established manufacturer programs. Such distributor

purchases are also at a marked-up price and do not qualify for key manufacturer year-end

rebates. These higher costs would prevent a new entrant from being able to compete

aggressively on price. Additionally, without full control of its inventory, this attempted work-

around hampers the new entrant's ability to provide timely and quality service to its retailers

and servicers.

41.      Because of PoolCorp's monopoly power and its nationwide pattern of exclusionary

conduct, swimming pool product manufacturers were faced with a Hobson 's choice: (1)

permanently lose PoolCorp, their largest customer, or (2) accede to PoolCorp's threats and

demands and refuse to sell swimming pool products to smaller, less powerful distributors.

## THE FEDERAL TRADE COMMISSION'S ACTION AGAINST POOLCORP

42.     On November 21, 2011, the FTC issued a complaint ("FTC Complaint") against

PoolCorp for violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

*See*, In the Matter of Pool Corporation, FTC file No. 101 0115.

43.     The FTC Complaint states:

> This action addresses PoolCorp's exclusionary acts and practices in the market for the
> distribution of residential and commercial swimming pool products. PoolCorp has
> unlawfully maintained its monopoly power by threatening to refuse to deal with any
> manufacturer that sells its pool products to a new distributor entering the market,
> thereby foreclosing potential rivals from an input necessary to compete. PoolCorp's
> conduct deters and impedes entry, raises its rivals' costs, and results in higher prices,
> reduced output and lessens consumer choice.

44.     The FTC Complaint alleges that "beginning in 2003 and continuing to today,

PoolCorp has implemented an exclusionary policy that effectively impeded entry by new

distributors by preventing them from being able to purchase swimming pool products directly

from manufacturers." Specifically, when a new distributor attempted to enter the market,

PoolCorp threatened manufacturers that it would not deal with them if they also supplied the

new entrant. PoolCorp threatened to terminate the purchase and sale of the manufacturer's

swimming pool products for all 200+ PoolCorp distribution centers located throughout the

U.S. PoolCorp's policy did not exclude existing rivals from obtaining swimming pool

products from manufacturers.

## THE EFFECTS OF POOLCORP'S CONDUCT

45.     The effects of PoolCorp's anticompetitive and exclusionary acts have been to capture

and/or maintain a large percentage of the relevant market, to substantially impair and

foreclose competition from rivals from a substantial share of the relevant market, and to

significantly raise barriers to entry for potential rivals.

46.     The acts and practices of PoolCorp as alleged herein have had the purpose, capacity, tendency, and effect of impairing the competitive effectiveness of rivals, raising its rivals' costs, and deterring and impeding market entry. PoolCorp's unlawful conduct has contributed significantly to the enhancement and maintenance of its monopoly power.

47.     PoolCorp's conduct adversely affected competition and consumers by:

  (a)     increasing or maintaining premium process for swimming pool products at artificially high levels;

  (b)     reducing the output of swimming pool products;

  (c )    eliminating or significantly reducing price competition for swimming pool products;

  (d)     deterring, delaying, and impeding the ability of actual or potential competitors to enter or to expand their sales in the swimming pool products distribution market; and

  (e)     reducing consumer choice among competing swimming pool product distributors.

48.     There are no legitimate pro-competitive efficiencies that justify PoolCorp's conduct or outweigh its substantial anticompetitive effects.

49.     Absent PoolCorp's anticompetitive conduct and the substantial foreclosure and reduction of effective competition caused by such conduct, PoolCorp would have faced competition and reduced the prices it charged to purchasers of swimming pool products.

50.     Moreover, had actual or potential swimming pool product distributors not been prevented by PoolCorp's anticompetitive conduct from effectively competing in the market

for such products, those actual or potential competitors would have sold more swimming pool products, gained a larger market share, and achieved economies of scale and scope that could have further driven down prices for swimming pool products in the marketplace.

51.     By unlawfully excluding and impairing competition, PoolCorp's conduct has caused Plaintiff and other Class Members to pay more for swimming pool products than they otherwise would have paid absent PoolCorp's illegal, exclusionary conduct.

52.     As a result of PoolCorp's unlawful, anticompetitive conduct, Plaintiff and other Class Members were compelled to pay, and did pay, artificially inflated prices for the swimming pool products they purchased.

53.     Had potential competitors been able to prepare to enter, enter, and/or remain in the swimming pool products distribution market unimpeded by PoolCorp's illegal conduct, Plaintiff and other members of the Class would have been able to, inter alia, purchase swimming pool products for lower prices.

54.     Because of PoolCorp's anticompetitive practices, Plaintiff and other Class Members who purchased swimming pool products paid artificially high and supra-competitive prices.

55.     Plaintiff and the other Class Members have, as a consequence, sustained losses and damage to their business and property in the form of the payment of overcharges for swimming pool products. The full amount of such damages will be calculated after discovery and upon proof at trial.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring this action on behalf of themselves and, under Fed. R. Civ. P. 23(a) and (b)(3), as representatives of a Class defined as follows:

All persons or entities that purchased swimming pool products directly from any Defendant at any time from January 1, 2003 to the present.

57.     The following persons or entities are excluded from the proposed class:

   (a) Defendants and their respective subsidiaries and affiliates;

   (b) all governmental entities; and

   (c) the judges in this case and any members of their immediate families.

58.     Members of the Indirect Purchaser Class are so numerous that joinder is impracticable. Plaintiffs believe that the Class includes tens of thousands, if not hundreds of thousands, of retailers, servicers, and other consumers.

59.     The Class Members are geographically dispersed throughout the U.S. such that joinder is impractical.

60.     Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class were damaged by the same wrongful conduct of the Defendants, *i.e.*, they paid artificially inflated prices for swimming pool products as a result of Defendants' wrongful conduct.

61.     Moreover, Plaintiffs have sustained damage in that they, during the Class Period, purchased swimming pool products from PoolCorp at artificially high prices as a result of PoolCorp's anticompetitive actions described herein.

62.     Plaintiffs will fairly and adequately protect and represent the interests of the Class. The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the Class.

63.     Plaintiffs are represented by counsel with experience in the prosecution of class action antitrust litigation.

64.    Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Defendants have acted on grounds generally applicable to the entire Class thereby making overcharge damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Defendants' wrongful conduct.

65.    Questions of law and fact common to the Indirect Purchaser Class include:

    (a)    whether the swimming pool product distribution market in the U.S. constitutes a relevant market;

    (b)    whether the swimming pool products distribution market in the following regional markets constitute relevant alternative markets: Alabama, California, Florida, Louisiana, Missouri, New York, Oklahoma, Tennessee, and Texas.

    (c)    whether PoolCorp possess monopoly power in the swimming pool products distribution market;

    (d)    whether, through the conduct alleged herein, PoolCorp willfully acquired or maintained or enhanced its monopoly power in the swimming pool product distribution market;

    (e)    whether, through the conduct alleged herein, PoolCorp attempted to monopolize the swimming pool product distribution market;

    (f)    whether PoolCorp monopolized the relevant market by engaging in unlawful exclusionary conduct to acquire or maintain or enhance its monopoly power in the swimming pool product distribution market;

    (g)    whether PoolCorp entered into exclusionary agreements to unlawfully acquire or maintain or enhance its monopoly power in the swimming pool product distribution market;

    (h)    whether and to what extent, PoolCorp's conduct caused Plaintiff and the Class Members to pay higher prices for swimming pool products and, thereby, suffer antitrust injuries; and

    (i)    whether Plaintiff and the Class Members are entitled to damages, and if so, the amount of damages.

66.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.

67.     The prosecution of separate actions by individual members of the Class would impose heavy burdens on the courts and the parties, and would create a risk of the inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

68.     Plaintiffs know of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## FRAUDULENT CONCEALMENT

69.     Plaintiff and the Class Members did not discover and could not discover through the exercise of reasonable diligence, the existence of the unlawful, anticompetitive conduct and exclusionary tactics alleged herein until November 2011 when the FTC investigation and related consent decree was first made public.

70.     Because PoolCorp's agreements, understandings, and unlawful actions were not made public until November 21, 2011, before that time, Plaintiff and the members of the

17

Class were unaware of PoolCorp's unlawful conduct, and they did not know before then that they were paying supra-competitive prices for swimming pool products throughout the U.S. during the Class Period.

71. The affirmative acts of PoolCorp alleged herein, including the unlawful, anticompetitive conduct, were wrongfully concealed and carried out in a manner that precluded detection.

72. Swimming pool products are not exempt from antitrust regulation, and thus, before November 2011, Plaintiff reasonably considered the swimming pool product distribution market to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been put on notice to investigate the lawfulness or legitimacy of PoolCorp's swimming pool product prices before November 2011.

73. Plaintiff and the Class Members could not have discovered the alleged monopolization and/or attempted monopolization at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by PoolCorp to avoid detection of, and fraudulently conceal, its anticompetitive conduct and exclusionary tactics.

74. Because the alleged unlawful, anticompetitive conduct and exclusionary tactics were affirmatively concealed by PoolCorp, Plaintiff and members of the Class had no knowledge of any facts or information that would have caused a reasonably diligent person to investigate whether PoolCorp was engaging in such unlawful, anticompetitive conduct and exclusionary tactics until November 2011, when reports of the FTC's investigation of such conduct were first publicly disseminated.

75.     As a result of PoolCorp's fraudulent concealment, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and the members of the Class have alleged in this Complaint.

## COUNT ONE

### Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2

76      Plaintiff hereby restates and realleges each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length.

77.     PoolCorp acquired, willfully maintained and unlawfully exercised monopoly power in the relevant market through the exclusionary, anticompetitive conduct set forth above, including, but not limited to: (1) entering into exclusive dealing arrangements with manufacturers of swimming pool products; (2) adopting and publicly announcing a general policy of refusing to deal with manufacturers that sold swimming pool products to competing swimming pool product distributors; (3) threatening to refuse to buy swimming pool products from manufacturers that sold swimming pool products to other distributors; and (4) engaging in an aggressive strategy of acquiring competitor swimming pool product distributors.

78.     PoolCorp has effectively excluded competition from a significant portion of the relevant market, unlawfully acquired and expanded its dominant market share in the relevant market, and profited from its anticompetitive conduct by maintaining prices at artificially high levels and by otherwise reaping the benefits of its illegally obtained and maintained monopoly power.

79.     There is no legitimate business justification for PoolCorp's anticompetitive actions and the conduct through which it acquired and maintained its monopoly power in the relevant market. The anticompetitive effects of PoolCorp's conduct far outweigh any conceivable pro-

competitive benefit or justification. Even if such justification had existed, any possible pro-competitive benefits could have been obtained by less restrictive alternatives.

80.     As a direct and proximate result of PoolCorp's anticompetitive conduct, Plaintiff and the other Class Members have been injured in their business and property by PoolCorp's unlawful monopolization of the relevant market. Plaintiff and the other members of the class have been forced to pay artificially high, supra-competitive prices for swimming pool products that are higher than they would have been absent PoolCorp's unlawful monopolization of the relevant market.

## COUNT TWO

### Attempted Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2

81.     Plaintiff hereby restates and realleges each and every allegation set forth above, with the same force and effect as if herein repeated and set forth at length.

82.     PoolCorp unlawfully attempted to acquire monopoly power in the relevant market during the Class Period, with the intention of doing so, through the exclusionary, anticompetitive conduct set forth above, including, but not limited to: (1) entering into exclusive dealing arrangements with manufacturers of swimming pool products; (2) adopting and publicly announcing a general policy of refusing to deal with manufacturers that sold swimming pool products to competing swimming pool distributors; (3) threatening to refuse to buy swimming pool products from manufacturers that sold swimming pool products to other distributors; and (4) engaging in an aggressive strategy of acquiring competing swimming pool product distributors.

83.     To the extent that PoolCorp has not already acquired and maintained monopoly power in the relevant market during the Class Period, the conduct described herein resulted in a dangerous probability it would acquire and maintain such monopoly power.

84.     PoolCorp has excluded actual and potential competition from the relevant market and, but unlawfully limiting the market shares of rivals, it has reaped the financial benefits of its attempt to acquire monopoly power.

85.     There is no legitimate business justification for PoolCorp's actions and the conduct through which it attempted to acquire monopoly power in the relevant market. The anticompetitive effects of PoolCorp's conduct far outweigh any conceivable pro-competitive benefit or justification. Even if such justification had existed, any possible pro-competitive benefits could have been obtained by less restrictive alternatives.

86.     As a direct and proximate result of PoolCorp's anticompetitive conduct, Plaintiff and members of the class have been injured in their business and property by PoolCorp's attempt to monopolize the relevant market. Plaintiff and the other members of the Class have been forced to pay artificially high, supra-competitive prices for swimming pool products that are higher than they would have been absent PoolCorp's attempt to monopolize the relevant market.

## JURY DEMAND

87.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

a) that process issue according to law;

b) that the Defendants be served with a copy of Plaintiff's Complaint and show cause why the prayers for relief requested by Plaintiff should not be granted;

c) that the Class defined in this Complaint be certified in accordance with Fed. R. Civ. P. 23(a) and (b)(3);

d) that Plaintiff Duane's Pool Service be designated as the representative for the Class;

e) that counsel for Oasis Pool Service, In be designated as counsel for the Class;

f) that Plaintiff be granted a trial by jury in this matter;

g) that the Court enter judgment against the Defendants, jointly and severally, for all general and compensatory damages allowable to Plaintiff;

h) that the Court enter judgment against the Defendants for all special damages allowable to Plaintiff;

i) that the Court enter judgment against the Defendants for all equitable relief allowable to Plaintiff;

j) that the Court enter judgment against the Defendants for all declaratory relief allowable to Plaintiff;

k) that the Court enter judgment against the Defendants for all other relief allowable to Plaintiff;

l) that the Court award Plaintiff prejudgment interest on all damages;

m) that the Court award Plaintiff the costs and expenses in this litigation, including reasonable attorneys' fees and expert fees; and

n) that the Court award Plaintiff such other and further monetary, equitable and declaratory relief as may be just and proper under the circumstances.


Dated: April 30, 2012

RESPECTFULLY SUBMITTED,

/s/ W. James Singleton
W. James Singleton
LABR#:  17801
wjsingleton@singletonlaw.com
The Singleton Law Firm
4050 Linwood Avenue
Shreveport, LA  71108
Telephone: (318) 631-5200
Facsimile:  (318) 636-7759


/s/ Derriel C. McCorvey
Derriel C. McCorvey
LABR# 26083 / TXBR# 24073351
derriel@mccorveylaw.com
**The Law Office of Derriel McCorvey**
115 W. Main Street Suite 14
P.O. Box 2473
Lafayette, LA 70501
Telephone: (337)-291-2431
Facsimile:  (337)-291-2433


/s/ Mike Espy
Mike Espy
MSBR# 5240
mikesmike@mikepsy.com
Mike Espy PLLC
317 E. Capitol Street, Ste. 101
Jackson, MS 39201
Telephone: (601)-355-9101
Facsimile:  (601)-355-6021


*ATTORNEYS FOR OASIS POOL SERVICE, INC.*